IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) <br> and THE STATE OF ILLINOIS, ) <br> *ex rel.* KWAME RAOUL, Attorney General, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> BUCKEYE PIPE LINE COMPANY, L.P. ) <br> and WEST SHORE PIPE LINE COMPANY, ) <br> ) <br> Defendants. ) | Civil Action No. 21-cv-5424 |

# COMPLAINT

The United States of America, by the authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), the United States Army Corps of Engineers ("Corps") and the Secretary of the United States Department of the Interior ("DOI") on behalf of the United States Fish & Wildlife Service ("FWS"), and the State of Illinois (the "State"), *ex rel.* Kwame Raoul, Attorney General of the State of Illinois, on his own motion and at the request of the Illinois Environmental Protection Agency ("IEPA") and the Illinois Department of Natural Resources ("IDNR"), file this Complaint and allege as follows:

NATURE OF THE ACTION

1. This is a civil action for penalties and injunctive relief under the Clean Water Act ("CWA"), 33 U.S.C. § 1251 *et seq.* and for damages for injury to, destruction of, loss of, or loss of use of, natural resources, and the unreimbursed costs of assessment thereof under the Oil Pollution Act ("OPA"), 33 U.S.C. § 2701 *et seq.* against Buckeye Pipe Line Company, L.P.

("Buckeye") and West Shore Pipe Line Company ("West Shore") (collectively "Defendants") with respect to the discharges of crude oil and the violations of a permit issued pursuant to CWA Section 404(a) that occurred beginning on or about December 13, 2010, near Lockport, Will County, Illinois.

2. This action is commenced under CWA Section 311(b)(7), 33 U.S.C. § 1321(b)(7), to obtain civil penalties against Defendants for discharging oil in violation of CWA Section 311(b)(3), 33 U.S.C. § 1321(b)(3), and under CWA Section 404(s), 33 U.S.C. § 1344(s), to obtain injunctive relief and penalties for violating a condition or limitation set forth in a permit issued by the Corps pursuant to CWA Section 404(a), 33 U.S.C. § 1344(a).

3. In this action, the United States seeks to require Defendants, at their own expense and at the direction of the EPA and the Corps, to restore and/or mitigate the damages caused by their unlawful activities, and to pay civil penalties, as provided in 33 U.S.C. §§ 1321(b) and 1344(s).

4. The United States also commences this action on behalf of the Department of the Interior, a federal agency that has been designated by the President to act on behalf of the public with respect to a variety of natural resources and their supporting ecosystems belonging to, managed by, appertaining to, or otherwise controlled by the United States ("Federal Trustee"). Exec. Order No. 12580 as amended by Exec. Order 12777; 40 C.F.R. § 300.600. The Secretary's trusteeship includes, but is not limited to, the following natural resources and their supporting ecosystems: migratory birds; certain anadromous fish, endangered species and marine mammals; federally owned lands and minerals; and certain federally managed water resources. 40 C.F.R. § 300.600(b)(2).

5. The Secretary of the Interior has delegated to the Regional Director of the FWS, Region 3, the authority to act as the authorized official for all natural resources within the trusteeship of the Department of the Interior with respect to natural resource damage assessment activities related to the discharge of oil in or around Will County, Illinois.

6. The United States, through DOI and FWS, is a trustee for certain natural resources in and around Line 257 located near Lockport, Will County, Illinois.

7. The State of Illinois, *ex rel.*, Kwame Raoul, Attorney General of the State of Illinois, is a state of the United States, a body politic and a sovereign entity. Kwame Raoul is the duly elected, qualified and sworn Attorney General of the State of Illinois, having the powers and duties prescribed by the IL. CONST. art. V., § 15 (1970), and having all the powers and duties of the Attorney General at common law. The Attorney General possesses both the statutory and common law powers to bring this action on behalf of the State of Illinois, its governmental agencies, and its people.

8. The Illinois Department of Natural Resources is an agency of the State of Illinois and has been designated by the Governor as a co-trustee of the State of Illinois' natural resources.

9. The Illinois Environmental Protection Agency is an agency of the State of Illinois and has been designated by the Governor as a co-trustee of the State of Illinois' natural resources.

## JURISDICTION, AUTHORITY AND VENUE

10. This Court has jurisdiction over the subject matter of the United States' claims in this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1355; CWA Sections 311(b)(7)(E), 311(n),

and 404(s), 33 U.S.C. §§ 1321(b)(7)(E), 1321(n), and 1344(s); and OPA Section 1017(b), 33 U.S.C. § 2717(b). The Court has personal jurisdiction over the Defendants.

11. Authority to bring this action is vested in the United States Department of Justice by CWA Section 506, 33 U.S.C. § 1366, and by 28 U.S.C. §§ 516 and 519.

12. Venue lies in this District pursuant to 28 U.S.C. §§ 1391(b) and (c), and 1395(a) because the discharge of oil occurred in this judicial district and because Defendants conduct business in this judicial district. *See also* 33 U.S.C. § 1321(b)(7)(E). Venue is also proper in this district pursuant to CWA Section 404(s), 33 U.S.C. § 1344(s), because Defendants conduct business in this district. Venue is also proper in this district pursuant to 33 U.S.C. § 2717(b), because this is the judicial district in which the discharges of oil occurred.

13. Notice of commencement of this action has been given to the State of Illinois, pursuant to CWA Section 404(s)(3), 33 U.S.C. § 1344(s)(3).

## DEFENDANTS

14. Defendant Buckeye is a limited partnership organized under the laws of the State of Delaware and conducts business in Illinois with its headquarters in Emmaus, Pennsylvania.

15. Defendant West Shore is a corporation organized under the laws of the State of Delaware with its headquarters in Lemont, Illinois.

## STATUTORY AND REGULATORY BACKGROUND – CLEAN WATER ACT

16. CWA Section 311(b)(3), 33 U.S.C. § 1321(b)(3), prohibits the discharge of oil or hazardous substances into or upon the navigable waters of the United States or adjoining shorelines in such quantities that have been determined may be harmful to the public health or welfare or environment of the United States.

17. Pursuant to CWA Section 311(b)(4), 33 U.S.C. § 1321(b)(4), EPA has determined by regulation that discharges of oil in such quantities as may be harmful to the public health or welfare or environment of the United States include discharges of oil that "(a) Violate applicable water quality standards; or (b) Cause a film or sheen upon or discoloration of the surface of the water or adjoining shorelines, or cause a sludge or emulsion to be deposited beneath the surface of the water or upon adjoining shorelines." 40 C.F.R. § 110.3.

18. Pursuant to CWA Section 311(b)(7)(A), 33 U.S.C. § 1321(b)(7)(A), "[a]ny person who is the owner, operator, or person in charge of any . . . onshore facility . . . from which oil . . . is discharged in violation of paragraph (3), shall be subject to a civil penalty . . . ."

19. CWA Section 311(b)(7)(A), 33 U.S.C. § 1321(b)(7)(A), as modified by the Civil Monetary Penalty Inflation Adjustment Rules of 2008 and 2013, 73 Fed. Reg. 75,340 (Dec. 11, 2008) and 78 Fed. Reg. 66,643 (Nov. 6, 2013), and 40 C.F.R. § 19.4, provides that any person who is the owner, operator, or person in charge of an onshore facility from which oil is discharged in violation of CWA Section 311(b)(3), shall be subject to a civil penalty of up to $1,100 per barrel discharged for discharges occurring between January 13, 2009 and December 6, 2013.

20. CWA Section 404(a), 33 U.S.C. 1344(a), authorizes the Secretary of the Army, acting through the Corps, to issue permits for the discharge of dredged or fill material into navigable waters ("CWA Section 404 permit").

21. Regulations codified at 33 C.F.R. § 323.2(c) define "dredged material" as "material that is excavated or dredged from waters of the United States." The term "discharge of dredged material" means "any addition of dredge material into, including redeposit of dredged

material other than incidental fallback within, the waters of the United States." 33 C.F.R. § 323.2(d)(1).

22. Regulations codified at 33 C.F.R. § 323.2(e)(1) define "fill material" as "material placed in waters of the United States where the material has the effect of (i) Replacing any portion of a water of the United States with dry land; or (ii) Changing the bottom elevation of any portion of a water of the United States."

23. Regulations codified at 33 C.F.R. § 323.2(f) define "discharge of fill material" as "the addition of fill material into waters of the United States."

24. CWA Section 502(7), 33 U.S.C. § 1362(7), defines "navigable waters" as "the waters of the United States, including the territorial seas."

25. "Waters of the United States" has been defined to include, *inter alia*, "(a) All waters that are currently used, were used in the past, or may be susceptible to use in interstate or foreign commerce . . . (f) Wetlands adjacent to waters identified in paragraphs (a) through (e) of this section . . . ." 40 C.F.R. §§ 110.1 & 122.2 (1993); 33 C.F.R. § 328.3(a) (1993).

26. "Wetlands" have been defined as "those areas that are inundated or saturated by surface or groundwater at a frequency and duration sufficient to support, and that under normal circumstances do support, a prevalence of vegetation typically adapted to life in saturated soil conditions . . . ." Wetlands generally include swamps, marshes, bogs and similar areas. 40 C.F.R. §§ 110.1 & 122.2 (1993); 33 C.F.R. § 328.3(b) (1993).

27. "Adjacent" has been defined to mean "bordering, contiguous, or neighboring. Wetlands separated from other waters of the United States by man-made dikes or barriers,

natural river berms, beach dunes, and the like are 'adjacent wetlands.'" 33 C.F.R. § 328.3(a) (1993).

28. Each day that dredged or fill material remains in the place where it was discharged in violation of a permit issued under CWA Section 404(a) constitutes an additional and continuing violation of CWA Section 404(s), 33 U.S.C. § 1344(s).

29. CWA Section 404(s), 33 U.S.C. § 1344(s), authorizes the commencement of a civil action for appropriate relief, including civil penalties up to $25,000 per day of violation, and temporary and permanent injunctive relief, against any person who violates any condition or limitation set forth in a permit issued by the Army Corps of Engineers under CWA Section 404(a), 33 U.S.C. § 1344(a).

STATUTORY AND REGULATORY BACKGROUND – OIL POLLUTION ACT

30. OPA Section 1002(a), 33 U.S.C. § 2702(a), provides that "each responsible party for a . . . facility from which oil is discharged, or which poses a substantial threat of a discharge of oil, into or upon the navigable waters or adjoining shore lines . . . is liable for the removal costs and damages specified in [33 U.S.C. § 2702(b)] that result from such incident."

31. OPA Section 1001(7), 33 U.S.C. § 2701(7), provides: "'discharge' means any emission (other than natural seepage), intentional or unintentional, and includes, but is not limited to, spilling, leaking, pumping, pouring, emitting, emptying, or dumping."

32. OPA Section 1001(23), 33 U.S.C. § 2701(23), states, "'oil' means oil of any kind or in any form, including, but not limited to petroleum, fuel oil, sludge, oil refuse, and oil mixed with wastes other than dredged spoil, but does not include any substance which is specifically listed or designated as a hazardous substance under subparagraphs (A) through (F) of Section

101(14) of the Comprehensive Environmental Response, Compensation and Liability Act (42 U.S.C. § 9601) and which is subject to provisions of that Act."

33. OPA Section 1001(9), 33 U.S.C. § 2701(9), defines "facility" as "any structure, group of structures equipment, or device (other than a vessel) which is used for one or more of the following purposes: exploring for, drilling for, producing, storing, handling, transferring, processing, or transporting oil. This term includes any motor vehicle, rolling stock or pipeline used for one or more of these purposes."

34. OPA Section 1001(14), 33 U.S.C. § 2701(14), defines "incident" to mean "any occurrence or series of occurrences having the same origin, involving one or more . . . facilities . . . resulting in the discharge or substantial threat of discharge of oil."

35. OPA Section 1001(32)(F), 33 U.S.C. § 2701(32)(F), provides that "'responsible party' means . . . (F) In the case of a pipeline, any person owning or operating the pipeline."

36. OPA Section 1001(27), 33 U.S.C. § 2701(27), defines "person" to include a corporation.

37. Section 1002(b)(2) of OPA, 33 U.S.C. § 2702(b)(2), provides that "damages" referred to in Section 1002(a) of OPA, 33 U.S.C. § 2702(a), include "[d]amages for injury to, destruction of, loss of, or loss of use of, natural resources, including the reasonable costs of assessing the damage, which shall be recoverable by a United States trustee, a State trustee, an Indian tribe trustee, or a foreign trustee."

38. OPA Section 1001(20), 33 U.S.C. § 2701(20), provides: "'natural resources' includes land, fish, wildlife, biota, air, water, ground water, drinking water supplies, and other

such resources belonging to, managed by, held in trust by, appertaining to, or otherwise controlled by the United States . . . [or] any State or local government . . . ."

39. OPA Section 1001(21), 33 U.S.C. § 2701(21), provides that "'navigable waters' means the waters of the United States, including the territorial sea."

## FACTUAL ALLEGATIONS

40. Line 257 is a 12-inch, 3.5 mile long subsurface pipeline owned by West Shore and operated by Buckeye. At all times relevant to this action, the sole function of Line 257 was to transport crude oil from a Shell Oil terminal facility in Lockport, Illinois, to a Citgo oil refinery in Lamont, Illinois.

41. On or about December 13, 2010, Line 257 developed a hole in a segment of pipeline running below the ground surface between New Avenue and railroad tracks north of Lockport, Will County, Illinois.

42. The hole developed on Line 257 at a time when crude oil was not actively being pumped through the pipeline.

43. Later that day or early the next morning, when crude oil started pumping into Line 257 from the Shell terminal, oil was discharged from the pipeline.

44. The discharge of crude oil from Line 257 flowed into a drainage ditch, through a culvert under the railroad tracks, and into a wetland adjacent to the Illinois & Michigan Canal.

45. Approximately 1,857 barrels or more of crude oil were discharged from Line 257 before the hole was identified and the leak stopped (the "Discharge Incident").

46. Defendants are each a "person" within the meaning of CWA Sections 311(a)(7) and 502(5), and OPA Section 1001(27). 33 U.S.C. §§ 1321(a)(7), 1362(5), and 2701(27).

47. West Shore's pipeline designated as Line No. 257 is an "onshore facility" within the meaning of CWA Section 311(a)(10), 33 U.S.C. § 1321(a)(10), and is a "facility" within the meaning of OPA Section 1001(9), 33 U.S.C. § 2701(9), because it was and is used for "producing, storing, handling, transferring, processing, or transporting oil."

48. West Shore is the "owner" of Line No. 257 from which oil was discharged within the meaning of CWA Section 311(a)(6), 33 U.S.C. § 1321(a)(6), and OPA Section 1001(26), 33 U.S.C. § 2701(26).

49. Buckeye is the "operator" of Line No. 257 from which oil was discharged within the meaning of CWA Section 311(a)(6), 33 U.S.C. § 1321(a)(6), and OPA Section 1001(26), 33 U.S.C. § 2701(26).

50. The release of crude oil from Line No. 257 near Lockport, Illinois, on or around December 13 and 14, 2010, constituted a "discharge" of oil within the meaning of CWA Section 311(a)(2), 33 U.S.C. § 1321(a)(2).

51. Crude oil is "oil" within the meaning of CWA Section 311(a)(1), 33 U.S.C. § 1321(a)(1), and constitutes "oil" within the meaning of OPA Section 1001(23), 33 U.S.C. § 2701(23).

52. In the course of responding to the discharge of oil, Defendants, among other actions, placed sumps, booms, straw bales, and groundwater monitoring wells, and excavated trenches, in the wetland adjacent to the Illinois & Michigan Canal.

53. Following the initial response to the spill, Defendants discharged dredged and/or fill materials at the spill site, without a CWA Section 404 permit.

54. On or about June 27, 2013, the United States Army Corps of Engineers granted Defendants a Partial After-The-Fact authorization under Regional Permit 13.

55. After receiving the Partial After-The-Fact authorization under Regional Permit 13, Defendants conducted activities that impacted waters of the United States beyond the scope of their June 27, 2013, authorization.

56. The discharges of dredged and/or fill described in paragraph 55 occurred in a wetland, as defined in 40 C.F.R. § 122.2 and 33 C.F.R. § 328.3(c)(4).

57. The wetland into which Defendants discharged dredged and/or fill material is adjacent to the Illinois & Michigan Canal, a navigable-in-fact water, and is therefore a water of the United States. 40 C.F.R. §§ 110.1 & 122.2 (1993); 33 C.F.R. § 328.3(b) (1993).

58. The crude oil discharged from Line 257 resulted in a discharge or substantial threat of discharge into or upon the navigable waters or adjoining shorelines within the meaning of OPA Section 1002, 33 U.S.C. § 2702.

59. Each Defendant is a "responsible party" within the meaning of OPA Section 1001(32)(B), 33 U.S.C. § 2701(32)(B), with respect to the Discharge Incident.

60. "Natural resources" as that term is defined in OPA Section 1001(20), 33 U.S.C. § 2701(20), held in trust by Federal, State and Tribal Trustees, have been injured, destroyed, or lost as the result of the Discharge Incident, within the meaning of 33 U.S.C. § 2702(b)(2).

## FIRST CLAIM FOR RELIEF
(Civil Penalties under CWA Section 311(b) Related to Discharge of Oil)

61. Paragraphs 1 through 60 are re-alleged and incorporated herein by reference.

62. On or about December 13, 2010, damage to Line 257 near Lockport, Illinois, resulted in the discharge of oil in a harmful quantity into the navigable waters and/or adjoining shorelines of the United States in violation of CWA Section 311(b)(3), 33 U.S.C. § 1321(b)(3).

63. West Shore, as the owner of Line 257 at the time of this discharge, is liable for a civil penalty of up to $1,100 per barrel discharged, pursuant to CWA Section 311(b)(7)(A), 33 U.S.C. § 1321(b)(7)(A), and 40 C.F.R. § 19.4.

64. Buckeye, as the operator of Line 257 at the time of this discharge, is liable for a civil penalty of up to $1,100 per barrel discharged, pursuant to CWA Section 311(b)(7)(A), 33 U.S.C. § 1321(b)(7)(A), and 40 C.F.R. § 19.4.

## SECOND CLAIM FOR RELIEF
(Civil Penalties Under CWA Section 404(s))

65. Paragraphs 1 through 60 are re-alleged and incorporated herein by reference.

66. Although Buckeye received a Partial After-The-Fact authorization on June 27, 2013, Buckeye conducted activities that exceeded the scope of that authorization.

67. By exceeding the scope of the Partial After-The-Fact authorization, Buckeye violated a condition or limitation of that authorization.

68. Each instance of Buckeye exceeding the scope of the Partial After-The-Fact authorization constitutes a violation of CWA Section 404(s), 33 U.S.C. § 1344(s).

69. Buckeye is liable for civil penalties under CWA Section 404(s), 33 U.S.C. § 1344(s).

### THIRD CLAIM FOR RELIEF
(Injunctive Relief under CWA Section 404(s))

70. Paragraphs 1 through 60 are re-alleged and incorporated herein by reference.

71. Although Buckeye received a Partial After-The-Fact authorization on June 27, 2013, Buckeye conducted activities that exceeded the scope of that authorization.

72. By exceeding the scope of the Partial After-The-Fact authorization, Buckeye violated a condition or limitation of that authorization.

73. Each instance of Buckeye exceeding the scope of the Partial After-The-Fact authorization constitutes a violation of CWA Section 404(s), 33 U.S.C. § 1344(s).

74. The United States is entitled to injunctive relief, pursuant to CWA Section 404(s), 33 U.S.C. § 1344(s).

### FOURTH CLAIM FOR RELIEF
(Liability under OPA Section 1006 for
Assessment Costs and Natural Resource Damages)

75. Paragraphs 1 through 60 are re-alleged and incorporated herein by reference.

76. As a "responsible party," each Defendant is strictly liable to the United States and the State of Illinois pursuant to OPA Section 1002(b)(2)(A), 33 U.S.C. § 2702(b)(2)(A), for damages for injury to, destruction of, loss of, or loss of use of, natural resources, including the reasonable costs of assessing the damages resulting from the Discharge Incident.

### PRAYER FOR RELIEF

WHEREFORE, the United States prays that this Court:

A. Impose civil penalties under Section 311(b) of the Clean Water Act on each Defendant in an amount up to $1,100 per barrel of oil discharged as alleged in this Complaint;

  B.  Issue an order pursuant to CWA Section 404(s), imposing civil penalties on each Defendant of up to $25,000 for each day that Defendants are in violation of a permit issued under CWA Section 404(a).

  C.  Issue an order pursuant to CWA Section 404(s) compelling Defendants to restore the wetlands that were damaged due to Defendants' violation of a permit issued under CWA Section 404(a).

  AND WHEREFORE, the United States and the State of Illinois prays that this Court:

  D.  Enter a judgment, pursuant to OPA Sections 1002(a) and 1006, 33 U.S.C. §§ 2702(a) and 2706, awarding the United States and the State of Illinois damages for injury to, destruction of, loss of, or loss of use of natural resources, including the reasonable costs of assessing such injury, destruction, loss, or loss of use, which will be binding on this action and on any subsequent action or actions to recover assessment costs or damages;

  E.  Grant such other and further relief that this Court deems just and proper.

          Respectfully submitted,

          FOR THE UNITED STATES OF AMERICA

          TODD KIM
          Assistant Attorney General
          Environment and Natural Resources Division
          U.S. Department of Justice

          s/Michael J. Zoeller
          MICHAEL J. ZOELLER
          Environmental Enforcement Section
          Environment and Natural Resources Division
          U.S. Department of Justice
          P.O. Box 7611
          Washington, D.C. 20044-7611
          (202) 305-1473
          michael.zoeller@usdoj.gov

                    s/Daniel Dertke (with consent)
DANIEL DERTKE
Environmental Defense Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 514-0994
daniel.dertke@usdoj.gov

JOHN R. LAUSCH, JR.
United States Attorney

                    s/Jonathan C. Haile (with consent)
By:  JONATHAN C. HAILE
Assistant United States Attorney
Northern District of Illinois
219 South Dearborn Street, Fifth Floor
Chicago, IL 60604
Voice: (312) 886-2055
jonathan.haile@usdoj.gov

OF COUNSEL:
RICHARD CLARIZIO
Associate Regional Counsel
U.S. Environmental Protection
   Agency, Region 5
77 West Jackson Boulevard
Chicago, IL 60604-3590

KEVIN J. JERBI
Assistant District Counsel
U.S. Army Corps of Engineers
   Chicago District
231 S. LaSalle Street, Suite 1500
Chicago, IL 60604

KIMBERLY GILMORE
Attorney-Advisor, Office of the Solicitor
U.S. Dept. of the Interior
Three Parkway Center, Rm 385
Pittsburgh, PA 15220

                                                PEOPLE OF THE STATE OF ILLINOIS,
                                                *ex rel.* KWAME RAOUL, Attorney
                                                General of the State of Illinois,

                                                MATTHEW J. DUNN, Chief
                                                Environmental Enforcement/
                                                Asbestos Litigation Division


                                      By:     s/Stephen J. Sylvester (with consent)
                                                STEPHEN J. SYLVESTER, Chief
                                                Assistant Attorney General
                                                Environmental Bureau

<u>OF COUNSEL</u>:

GERALD T. KARR
Assistant Attorney General
Environmental Bureau
69 W. Washington Street, 18th Floor
Chicago, Illinois   60602
(312) 814-3369
gerald.karr@ilag.gov