IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA and THE STATE OF ILLINOIS, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Civil Action No. 21-cv-5424 |
| BUCKEYE PIPE LINE COMPANY, L.P. and WEST SHORE PIPE LINE COMPANY, | ) | |
| Defendants. | ) | |

**CONSENT DECREE**


I. INTRODUCTION ....2
II. JURISDICTION AND VENUE ....5
III. APPLICABILITY ....5
IV. DEFINITIONS ....6
V. CIVIL PENALTY ....8
VI. OTHER PAYMENTS BY DEFENDANTS ....9
VII. STIPULATED PENALTIES ....9
VIII. LOCKPORT SPILL RESTORATION ACCOUNT ....10
IX. SPILL SITE ACTIVITIES ....11
X. COVENANT NOT TO SUE BY PLAINTIFFS ....11
XI. COVENANT NOT TO SUE BY DEFENDANTS ....12
XII. EFFECT OF SETTLEMENT ....13
XIII. ENFORCEMENT AND LITIGATION COSTS ....13
XIV. NOTICES ....13
XV. RETENTION OF DOCUMENTS ....17
XVI. EFFECTIVE DATE ....17
XVII. RETENTION OF JURISDICTION ....18
XVIII. PUBLIC PARTICIPATION ....18
XIX. APPENDICES ....18
XX. SIGNATORIES/SERVICE ....19
XXI. INTEGRATION AND MODIFICATION ....19
XXII. TERMINATION ....20
XXIII. 26 U.S.C. SECTION 162(f)(2)(A)(ii) IDENTIFICATION ....20
XXIV. FINAL JUDGMENT ....20

# I. INTRODUCTION

A. Plaintiff, the United States of America, on behalf of the United States Environmental Protection Agency ("EPA"), the U.S. Army Corps of Engineers ("Corps"), the U.S. Department of Interior ("DOI") acting through the U.S. Fish & Wildlife Service ("FWS"), filed a Complaint in this action concurrently with this Consent Decree, alleging that Defendants, Buckeye Pipe Line Company, L.P. ("Buckeye"), and West Shore Pipe Line Company ("West Shore"), are liable for civil penalties and injunctive relief under Sections 311(b)(3) and 404(s) of the Clean Water Act ("CWA"), 33 U.S.C. §§ 1321(b)(3), and 1344(s), and for damages under Section 1002(a) of the Oil Pollution Act ("OPA"), 33 U.S.C. § 2702(a).

B. Co-Plaintiff, the State of Illinois, on behalf of the Illinois Environmental Protection Agency ("Illinois EPA") and Illinois Department of Natural Resources ("IDNR"), joined the United States in filing the Complaint in this action, alleging that Defendants are civilly liable for damages under Section 1002(a) of the OPA, 33 U.S.C. § 2702(a).

C. In the Complaint, the United States seeks civil penalties, mitigation of environmental harm and other injunctive relief for the discharge of crude oil from a 12-inch diameter pipeline known as Line 257 near the intersection of Illinois Highway 83 and South Highwood Drive near Lockport, Will County, Illinois on December 13-14, 2010 (the "Oil Spill"), and Defendants' response thereto. Line 257 is owned by West Shore and operated by Buckeye. In addition, both the United States and the State of Illinois assert claims against the Defendants for damages for injury to, destruction of, or loss of natural resources resulting from the Oil Spill, as provided in Sections 1002(b)(2)(A) and 1006 of the OPA, 33 U.S.C. §§ 2702(b)(2)(A) and 2706.

D. The Complaint alleges that approximately 1,857 barrels of crude oil discharged from Line 257 on December 13-14, 2010, flowed along a pipeline right of-way through a culvert and into a wetland adjacent to the Illinois-Michigan Canal, a navigable water of the United States.

E. An EPA On-Scene Coordinator arrived at the scene of the Oil Spill on December 14, 2010, and led a coordinated effort of cleanup response, with the assistance of the Lockport Fire Department, Illinois EPA, and Buckeye and its response contractors. EPA oversaw the initial cleanup efforts and has continued to monitor activities at the Spill Site. EPA issued an Order, dated December 16, 2010, requiring Buckeye to take certain steps to respond to the Oil Spill. *In the Matter of: West Shore Pipe Line, Co and Buckeye Pipe Line Company, L.P.* Order for Compliance under § 311(c) of the Clean Water Act, EPA Docket # CWA 1321-5-11-001 ("EPA Order"). The EPA Order remains effective prior to entry of this Consent Decree.

F. Pursuant to the EPA Order, Defendants removed crude oil from the ditch along New Avenue and constructed a French Drain system to capture the oil. Booms and hay bales were laid along the perimeter of the spill in the West Area Wetland to prevent additional

migration. Defendants recovered free product and developed work plans focused on cleanup, including excavation of contaminated soil and sediment.

G. Pursuant to the EPA Order, Defendants have conducted monitoring, removal and restoration activities at the Spill Site and prepared monthly Removal Administrative Reports. Under the oversight of EPA's On-Scene Coordinator, Defendants have submitted and sought approval for a series of work plans to address Spill Site conditions and remaining contaminants. On March 10, 2020, Defendants notified EPA's On-Scene Coordinator that it had completed all required activities and requested that the EPA Order be closed.

H. On December 23, 2010, Illinois filed a complaint against Buckeye and West Shore related to groundwater contamination. *Illinois v. Buckeye Pipe Line Company, L.P.*, No. 10 CH 07824 (12th Judicial Cir.). On September 12, 2012, the State court entered the parties' plan for, among other things, well testing and future site investigation and monitoring by Illinois EPA after closure of the EPA Order ("State Order"). Pursuant to the terms of the State Order, Defendants are obligated to continue to perform ongoing remedial activities, including water supply testing, wetland monitoring, quarterly groundwater sampling, and submittal of Quarterly Progress Reports until concentrations in groundwater meet the remedial standards developed for the site in the Remedial Objectives Report and Remedial Action Plan currently pending review and approval by Illinois EPA.

I. On December 14, 2010, the Corps inspected the Site and observed the unauthorized discharge of dredged or fill material into waters of the United States, including wetlands directly abutting the Illinois and Michigan Canal, a traditional navigable water of the United States. On December 16, 2010, West Shore summarized impacts to jurisdictional areas, identified the locations for the cleanup measures already underway, and requested from the Corps an after the fact authorization under Regional Permit 13. On January 7, 2011, the Corps conducted a site inspection and determined that there had been unauthorized impacts to jurisdictional areas. On January 24, 2012, West Shore submitted to the Corps updated materials regarding work completed and West Shore requested that the after the fact authorization be updated to reflect work completed and work planned. On October 9, 2012, the Corps issued a Cease and Desist order to West Shore. On June 27, 2013, after reviewing additional submissions from West Shore, the Corps issued a Partial After–The-Fact authorization of impacts to 2.29 acres of waters of the United States. Following subsequent site inspections, the Corps maintained that it had discovered further activities that exceeded the 2.29 acres of impacts authorized by the Partial After-The-Fact authorization and, as a result, the Corps issued a non-compliance letter to West Shore dated August 10, 2015. West Shore maintained that it did not deviate from its approved plan or violate the Partial After-The-Fact authorization. Following a meeting on September 10, 2015 between representatives of the Corps and West Shore, at the request of the Corps, West Shore submitted an amendment for an additional 0.034 acres to cover a contingency on one aspect of the site work.

J. The wetland area contaminated by the Oil Spill is a designated critical habitat for the Hine's emerald dragonfly (*Somatochlora hineana*), a Federal and State endangered species. The Hine's emerald dragonfly survives in only four states in the United States. Of these, the

Illinois population appears to be the center of genetic diversity for the species, but is the population in the most danger of near-term extirpation, with a population generating only 86 to 313 adults per year. This wetland is on a parcel of land that is part of the Army Corps of Engineers' Regulatory Branch project number LRC-2010-815 on the Hanson Material Services "Long Run Parcel", a.k.a. Critical Habitat Unit – 7.

K. In 2014, Buckeye and West Shore entered into a Cooperative Agreement Regarding Natural Resource Damages related to the Oil Spill with the three trustees for natural resources: DOI, acting by and through the FWS; IDNR; and Illinois EPA (collectively, the "Trustees"). Buckeye and West Shore met with the Trustees numerous times to discuss the assessment and restoration of injured natural resources. Defendants have reimbursed the Natural Resource Damage Assessment Costs incurred by the federal and State Trustees through September 30, 2020.

L. The Trustees estimated damages to injured natural resources based on an ecological service model, relying on two valuation methodologies—a "habitat equivalency analysis" for injury to natural resource services produced by habitat and a "resource equivalency analysis" for injury to the endangered Hine's emerald dragonfly — that are commonly used in such cases. The Trustees describe how these estimated damages were calculated and provide a description of how this applies to the natural resource damage assessment and restoration ("NRDAR") process overall in the Trustees' NRDA Restoration Overview Document attached as Exhibit 1 to this Consent Decree. Defendants took no part in preparing Exhibit 1 and do not admit, endorse or reject its content.

M. On August 24, 2020, Defendants submitted a post-construction adaptive management and monitoring plan for continued ecological restoration of restored portions of the Spill Site. Plaintiffs have reviewed, commented on, and accepted a revised West Area Wetland Adaptive Management and Monitoring Plan, attached as Exhibit 3 to this Consent Decree.

N. Defendants represent that they took immediate actions upon discovery of the discharge to contain the crude oil and to minimize exposure to humans and wildlife in the area around the discharge. Defendants have removed and repaired the section of pipe that ruptured and are continuing to complete all requirements of existing orders with EPA and Illinois EPA to clean up the impacted land and waterways.

O. Since December 13, 2010, West Shore has implemented certain changes and/or improvements to its operation and maintenance of Line 257. Those improvements include, but are not limited to, improvements in control room operating procedures, operator training, and installation and operation of a check valve and actuated block valve to provide for static leak detection to prevent future leaks from going undetected.

P. The Defendants do not admit nor deny the allegations in the Complaint filed in this action and do not admit any liability arising out of the transactions or occurrences alleged in this action.

Q. The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid continued litigation between the Parties on the claims addressed in the Consent Decree, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law except as provided in Section II, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## II. JURISDICTION AND VENUE

1. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345 and 1355; Sections 311(b)(7)(E) and (n) and 404(s) of the CWA, 33 U.S.C. §§ 1321(b)(7)(E) and (n), 1344(s); and Section 1017(b) of the OPA, 33 U.S.C. § 2717(b). The Court has personal jurisdiction over the Parties to this Consent Decree.

2. Venue lies in this judicial district pursuant to 28 U.S.C. §§ 1391 and 1395 because the claims arose in this district and Defendants are located and doing business in this district.

3. For purposes of this Decree, or any action to enforce this Decree, Defendants consent to the Court's jurisdiction over this Decree or such action and over Defendants and consent to venue in this judicial district.

4. For purposes of this Decree, Defendants agree that the Complaint states claims upon which relief may be granted pursuant to CWA Sections 311 and 404, 33 U.S.C. §§ 1321 and 1344, and OPA Sections 1002 and 1006, 33 U.S.C. §§ 2702 and 2706.

## III. APPLICABILITY

5. The obligations of this Consent Decree apply to and are binding upon: the United States, on behalf of EPA, FWS, DOI, and the Corps; the State of Illinois, on behalf of Illinois EPA and IDNR; and upon Defendants, including without limitation any successors, assigns, or other entities or persons otherwise bound by law. Each Defendant shall be jointly and severally liable for all of the obligations under this Consent Decree.

6. No transfer of ownership or operation of the Facility shall relieve Defendants of their obligation to ensure that the terms of this Consent Decree are implemented, unless agreed in writing by the United States and the State. In any action to enforce this Consent Decree, the Defendants shall not raise as a defense the failure by any of their officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree; nor shall Defendants contest the right of any of the Trustees to enforce the provisions of this Consent Decree.

7. This Consent Decree is not and shall not be interpreted to be a permit under any federal, state, or local laws or regulations.

## IV. DEFINITIONS

8. Terms used in this Consent Decree that are defined in the CWA or in the OPA, or in regulations promulgated thereunder, shall have the meanings assigned to them in the respective statute or such regulations, unless otherwise provided in this Decree. Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a. "Complaint" shall mean the complaint filed by the United States and Illinois in this action.

b. "Consent Decree" or "Decree" shall mean this document and the appendices attached hereto. In the event of a conflict between this Consent Decree and any appendix, this Consent Decree shall control.

c. The "Corps" shall mean the United States Army Corps of Engineers and any of its successor departments or agencies.

d. "Covered Clean Water Act Claims" shall mean any claim(s) for damages, penalties or injunctive relief for alleged violations of the CWA or any CWA permit or authorization, arising out of the Oil Spill or Defendants' Response, that occurred prior to the date of lodging of this Consent Decree, including, without limitation: (i) civil penalties under CWA Section 311(b)(7)(A), 33 U.S.C. § 1321(b)(7)(A), and 40 C.F.R. § 19.4, related to the discharge of oil; and (ii) civil penalties and/or injunctive relief under CWA Sections 309 and 404, 33 U.S.C. §§ 1319 and 1344, related to activities at or in the vicinity of the Spill Site that allegedly exceeded the scope of Defendants' Partial After-The-Fact authorization, allegedly resulting in violations of CWA Section 301, 33 U.S.C. § 1311.

e. "Covered Natural Resource Damages" shall mean any damages recoverable by the United States or the State as trustees of natural resources on behalf of the public under Sections 1002(b)(2)(A) and 1006 of OPA, 33 U.S.C. §§ 2702(b)(2)(A) and 2706, as compensation for injury to, destruction of, or loss of Natural Resources and the human and ecological services they provide resulting from the Oil Spill and Defendants' Response. Such damages include, without limitation: (i) assessment costs; (ii) the costs of restoration, rehabilitation, or replacement of injured or lost Natural Resources and natural resource services or acquisition of equivalent Natural Resources; (iii) the costs of planning, overseeing, and monitoring such restoration activities; and (iv) any other compensation for diminution in value or loss of use or non-use values of Natural Resources resulting from the Oil Spill and Defendants' Response.

f. "Day" shall mean a calendar day unless expressly stated to be a business day. In computing any period of time under this Consent Decree, the rules set forth in Rule 6(a) of the Federal Rules of Civil Procedure shall be followed.

g. "Defendants" shall mean Buckeye Pipe Line Company, L.P. and West Shore Pipe Line Company.

h. "Defendants' Response" shall mean the actions taken by Defendants and their contractors at or near the Spill Site in response to the Oil Spill.

i. "Effective Date" shall have the definition provided in Section XVI.

j. "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies.

k. "Facility" shall mean the 12-inch diameter, crude oil pipeline known as "Line 257," which runs from Lockport to Lemont, Illinois.

l. "FWS" shall mean the United States Fish & Wildlife Service and any of its successor departments or agencies.

m. "IDNR" shall mean the Illinois Department of Natural Resources and any of its successor departments or agencies.

n. "Illinois EPA" shall mean the Illinois Environmental Protection Agency and any of its successor departments or agencies.

o. "Interest," as that term is used in Section VI (Other Payments by Defendants) of this Consent Decree, shall mean interest at the rate provided in 28 U.S.C. § 1961. Interest shall be simple interest calculated on a daily basis.

p. "Lockport Spill Restoration Account" shall mean the separate project numbered account established within DOI's Natural Resource Damage Assessment and Restoration Fund ("DOI NRDAR Fund"), funded by the Defendants in accordance with Section VI (Other Payments by Defendants). Expenditures from this Lockport Spill Restoration Account shall be subject to the approval of the Trustees in accordance with Section VIII (Lockport Spill Restoration Account), and the Trustee Memorandum of Agreement, attached hereto as Appendix B.

q. "Natural Resources" shall have the meaning provided in OPA Section 1001(20), 33 U.S.C. § 2701(20).

r. "Oil Spill" shall mean the discharge of crude oil from a 12-inch diameter pipeline known as Line 257 near the intersection of Illinois Highway 83 and South Highwood Drive near Lockport, Will County, Illinois on December 13-14, 2010.

s. "Paragraph" shall mean a portion of this Decree identified by an Arabic numeral.

t. "Parties" shall mean the United States, the State, and Defendants.

u. “Section” shall mean a portion of this Consent Decree identified by a roman numeral.

v. “Spill Site” shall mean all surface and subsurface areas impacted by the Oil Spill in and around 13803 New Avenue approximately 0.7 miles south of 135th Street (Romeo Road) in Lemont Township, Will County, Illinois, and the adjacent wetland west of the CN railroad tracks. The Spill Site is depicted generally in the map shown in Appendix A.

w. “State” shall mean the State of Illinois.

x. “State Order” shall mean the Consent Order entered on September 12, 2012 in *Illinois v. Buckeye Pipe Line Company, L.P.*, No. 10 CH 07824 (12th Judicial Cir.).

y. “Trustees” shall mean the designated federal and state officials, and their designees, who act on behalf of the public as trustees for the Natural Resources, including those injured by the Oil Spill and Defendants’ Response: DOI, represented by FWS, is the federal trustee for Natural Resources related hereto; Illinois EPA and IDNR are the state trustees for Natural Resources related hereto.

z. “United States” shall mean the United States of America and each department, agency, and instrumentality of the United States, including EPA, the Corps, and DOI (including FWS).

## V. CIVIL PENALTY

9. Within thirty (30) Days after the Effective Date, Defendants shall pay the sum of $1,500,000 as a civil penalty, together with Interest accruing from the date on which the Consent Decree is lodged with the Court, at the rate specified in 28 U.S.C. § 1961 as of the date of lodging.

10. Defendants shall pay the civil penalty due under the preceding Paragraph by FedWire Electronic Funds Transfer (“EFT”) to the U.S. Department of Justice in accordance with instructions provided to Defendants by the Financial Litigation Unit (“FLU”) of the United States Attorney’s Office for the Northern District of Illinois after the Effective Date. The payment instructions provided by the FLU shall include a Consolidated Debt Collection System (“CDCS”) number, which Defendants shall use to identify all payments required to be made in accordance with this Consent Decree. The FLU will provide the payment instructions to:

Katy Dunlap
Buckeye Partners, L.P.
One Greenway Plaza, Suite 600
Houston, TX 77046
kdunlap@buckeye.com
Office: 832-615-8604
Cell: 832-389-6774

on behalf of Defendants. Defendants may change the individual to receive payment instructions on their behalf by providing written notice of such change to the United States and EPA in accordance with Section XIV (Notices). Such monies are to be deposited in the Oil Spill Liability Trust Fund. At the time of payment, Defendants shall send a copy of the EFT authorization form and the EFT transaction record, together with a transmittal letter, which shall state that the penalty is for the civil penalty owed pursuant to the Consent Decree in this case, and shall reference the Civil Action Number assigned to this case, and DOJ case number 90-5-1-1-11370 to: (i) EPA via email at acctsreceivable.cinwd@epa.gov and via regular mail at EPA Cincinnati Finance Office, 26 Martin Luther King Drive, Cincinnati, Ohio 45268; and (ii) the United States via email or regular mail in accordance with Section XIV. Such notice shall reference the CDCS Number and DOJ case number 90-5-1-1-11370 and shall specify that the payment is made for CWA civil penalties to be deposited into the Oil Spill Liability Trust Fund pursuant to 33 U.S.C. § 1321(s) and 26 U.S.C. § 9509(b)(8). Any funds received after 11:00 a.m. Eastern Standard Time shall be credited on the next business day.

11. Defendants shall not deduct any penalties paid under this Decree pursuant to this Section or Section VII (Stipulated Penalties) in calculating its federal, state or local income tax.

## VI. OTHER PAYMENTS BY DEFENDANTS

12. Payment for Natural Resources Damages and Wetland Mitigation. Within thirty (30) Days after the Effective Date, Defendants shall pay $7,200,000, plus Interest accruing from the date of lodging of this Consent Decree through the date of payment, to DOI for the joint benefit of the federal and State Trustees as damages for injury to Natural Resources and of the Corps to mitigate unauthorized impacts to wetlands alleged in the Complaint. The Defendants shall transfer these funds by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice account, in accordance with current EFT procedures, referencing DOJ Case Number 90-5-1-1-11370/1. This payment shall be made in accordance with instructions provided to Defendants by the Financial Litigation Unit of the United States Attorney's Office for the Northern District of Illinois following entry of the Consent Decree. A copy of the paperwork documenting the EFT and any accompanying correspondence shall be sent by the Defendants to the persons listed in Section XIV (Notices) for notices to DOI, FWS, IDNR, and Illinois EPA. Notices shall reference the DOJ case number (90-5-1-1-11370/1), and indicate that the payment relates to the "Buckeye Lockport, IL Pipeline Discharge," and include the name of the Defendants.

13. The payment in Paragraph 12 shall be deposited in the Lockport Spill Restoration Account for the joint use and benefit of the Federal and State Trustees in accordance with Section VIII of this Consent Decree.

## VII. STIPULATED PENALTIES

14. Assessment of Stipulated Penalties. For each failure to make any payment required under Paragraphs 9 and 12 when due, stipulated penalties shall accrue at a rate of two thousand dollars ($2,000) per day for each of the first thirty (30) days that a payment is late, and at a rate of four thousand dollars ($4,000) per day for each additional day that a payment is late.

15. Payment of any stipulated penalties shall be made in accordance with payment instructions in paragraph 10 above. All transmittal correspondence shall reference the Civil Action Number assigned to this case and DOJ Number 90-5-1-1-11370, and state that any such payment is for stipulated penalties due under this Consent Decree to be deposited into the United States Treasury.

16. Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

17. Notice and Demand. In the event of a failure to make a timely payment required by this Consent Decree, the United States, after consulting with the State, may provide Defendants with a written notice of noncompliance and a demand for payment of stipulated penalties, in the manner specified in Section XIV (Notices).

18. Defendants shall pay any stipulated penalty within thirty (30) Days of receiving a written demand from the United States.

19. The United States may, in the unreviewable exercise of its discretion, and after consulting with the State, reduce or waive stipulated penalties otherwise due to the United States under this Consent Decree.

20. Subject to the provisions of Section XII of this Consent Decree (Effect of Settlement), the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States and Illinois for Defendants' violation of this Consent Decree or applicable law.

## VIII. LOCKPORT SPILL RESTORATION ACCOUNT

21. At no further cost to the Defendants beyond the payments required by this Decree, the Trustees intend to prepare a Restoration Plan for Natural Resources and services injured, destroyed, or lost as a result of the Oil Spill and Defendants' Response. The Trustees intend to make a draft of the Restoration Plan available for public comment and to adopt the final Restoration Plan after considering all timely comments received from the public. As provided in

Appendix B (Trustee Memorandum of Agreement), the Trustees will jointly approve expenditures from the Lockport Spill Restoration Account consistent with the Restoration Plan. The Trustees will consult with the Corps regarding potential opportunities for wetland mitigation in projects evaluated by the Trustees. The undertakings in this Paragraph and Paragraph 22 are between the Plaintiffs and are not enforceable by the Defendants, and the failure of any Plaintiff to fulfill their respective undertakings under this Paragraph and Paragraph 22 shall not impact the Covenants Not to Sue contained herein.

22. All funds deposited in the Lockport Spill Restoration Account pursuant to Paragraph 12, including any interest thereon, shall be held in the Lockport Spill Restoration Account solely for use by the Trustees to jointly plan, implement, oversee, or monitor the restoration of Natural Resources in accordance with the Restoration Plan prepared pursuant to Paragraph 21. DOI shall, in accordance with law, pursuant to the terms of the Trustees' Memorandum of Agreement, and for the benefit of the Trustees, manage the funds in the Lockport Spill Restoration Account on behalf of the Trustees.

## IX. SPILL SITE ACTIVITIES

23. Receipt of the payment required by Paragraph 9 shall terminate and close the EPA Order *In the Matter of: West Shore Pipe Line, Co and Buckeye Pipe Line Company, L.P.* Order for Compliance under § 311(c) of the Clean Water Act, EPA Docket # CWA 1321-5-11-001. Upon closure of the EPA Order, Buckeye's further investigation and remedial actions at the Spill Site will be overseen and enforced by the Illinois EPA pursuant to the State Order. This Consent Decree does not incorporate the State Order and the State Order is not made enforceable through this Consent Decree.

24. Within sixty (60) days after the Effective Date, the Corps intends to issue an authorization, under Regional Permit-6, providing authorization for all of Defendants' Response, including all known past removal activities at the Spill Site in response to the Oil Spill, in substantially the form shown in Exhibit 2. Any such authorization will require Defendants' compliance with the West Area Wetland Adaptive Management and Monitoring Plan, attached as Exhibit 3. The Corps may enforce the requirements of the West Area Wetland Adaptive Management and Monitoring Plan through administrative or judicial means, but the Adaptive Management and Monitoring Plan is not made enforceable through this Consent Decree.

## X. COVENANT NOT TO SUE BY PLAINTIFFS

25. This Consent Decree resolves the civil claims of the Plaintiffs for the violations alleged in the Complaint filed in this action that occurred through the date of lodging. Except as specifically provided in Paragraphs 26 (Plaintiffs' General Reservations of Rights) and 27 (Additional Reservation Concerning Natural Resource Damages) below, Plaintiffs covenant not to sue or to take administrative action against Defendants with respect to Covered Clean Water Act Claims or for Covered Natural Resource Damages. This covenant not to sue will take effect upon Plaintiffs' receipt of all payments under Paragraphs 9 and 12 and all stipulated penalties, if any, that accrue if any of those payments is delayed. This covenant not to sue extends only to Defendants, its successors and assigns, and does not extend to any other person.

26. Plaintiffs' General Reservations of Rights. Notwithstanding any other provision of this Consent Decree, the United States and the State reserve, and this Consent Decree is without prejudice to, all rights against the Defendants with respect to all matters other than those expressly specified in the covenant not to sue in Paragraph 25, including, but not limited to:

a. Claims against the Defendants for their failure to satisfy a requirement of this Consent Decree;

b. Claims against the Defendants for penalties and damages, including assessment costs, under the OPA and any other applicable law, for injury to, destruction of, loss of, or loss of use of, Natural Resources that are not related to the Oil Spill or Defendants' Response;

c. Any criminal liability;

d. All legal and equitable remedies provided by federal or State law to address any imminent and substantial endangerment to the public health or welfare or the environment arising from, or posed by Defendants' Facility, whether related to the violations addressed in this Consent Decree or otherwise;

e. Claims for damages that are not Covered Natural Resource Damages as defined in this Consent Decree, including claims for any economic losses or damages paid by the Oil Spill Liability Trust Fund ("OSLTF") established pursuant to 26 U.S.C. §§ 4611 and 9509 relating to the Oil Spill or Defendants' Response;

f. Claims under 33 U.S.C. § 2702(a) and (b)(1)(A) for removal costs relating to the Oil Spill or Defendants' Response, including any liability for removal costs claims paid by the OSLTF;

g. Claims based on violations of State or Federal law that occur after the date of lodging of this Consent Decree; and

h. Claims based on violations of any CWA permit or authorization that occur after the date of lodging of this Consent Decree.

27. Additional Reservation Concerning Natural Resource Damages. Notwithstanding any other provision of this Consent Decree, the United States and the State reserve, and this Consent Decree is without prejudice to, the right to institute proceedings against the Defendants in this action or in a new action seeking recovery of Covered Natural Resource Damages, including costs of damages assessments, based on: (a) conditions unknown to the Trustees as of the date of lodging of this Consent Decree resulting from the Oil Spill or Defendants' Response that cause or contribute to injury to, destruction of, or loss of Natural Resources; or (b) information received by the Trustees after the date of lodging of this Consent Decree that, together with any other relevant information, indicates that the Oil Spill or Defendants' Response resulted in injury to, destruction of, or loss of Natural Resources of a type unknown or a magnitude significantly greater than was known to the Trustees as of the date of lodging of this

Consent Decree. For purposes of this Subparagraph, conditions or information known to the Trustees shall consist of any conditions or information in the files of, or otherwise in the possession of, any of the Trustees, or their contractors or consultants who worked on the Trustees' natural resource damages assessment projects.

## XI. COVENANT NOT TO SUE BY DEFENDANTS

28. Defendants covenant not to sue and agree not to assert or maintain any claims or causes of action against the United States or the State, and their employees, agents, contractors, departments, agencies, administrations and bureaus, related to the Oil Spill or Defendants' Response, including removal activities in connection with the Oil Spill through the date of lodging of this Consent Decree and Covered Natural Resource Damages, pursuant to the CWA, the OPA, or any other state or federal law or regulation. Defendants further covenant not to sue or to assert any direct or indirect claim for reimbursement or costs or damages resulting from the Oil Spill or Defendants' Response from the Oil Spill Liability Trust Fund.

## XII. EFFECT OF SETTLEMENT

29. This Consent Decree does not limit or affect the rights of Plaintiffs or Defendants against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendants, except as otherwise provided by law, including but not limited to 33 U.S.C. § 1365(b)(1)(B) and 42 U.S.C. § 7604(b)(1)(B).

30. This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

31. In any subsequent administrative or judicial proceeding initiated by the United States or the State for injunctive relief, recovery of removal costs, or damages, including Natural Resource Damages, or other relief relating to the Oil Spill or Defendants' Response, the Defendants shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States or the State in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the Covenants Not To Sue, as set forth in Section X.

32. This Consent Decree shall not preclude the United States or the State from instituting a separate or ancillary action to enforce the terms of this Consent Decree.

## XIII. ENFORCEMENT AND LITIGATION COSTS

33. The Parties shall bear their own costs of this action and this Consent Decree, including attorneys' fees, except that the United States and the State shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty, stipulated penalties, or other payments due but not paid by Defendants.

## XIV. NOTICES

34. Unless otherwise specified in this Decree, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing, sent by U.S. Mail (and also by electronic mail where provided), and addressed as follows:

To the United States (by email):

eescasemanagement.enrd@usdoj.gov
Re: DJ # 90-5-1-1-11370

To the United States (by mail):

EES Case Management Unit
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Re: DJ # 90-5-1-1-11370

To EPA (by mail and email):

Richard Clarizio
Associate Regional Counsel
Environmental Protection Agency, Region 5
77 West Jackson Blvd. (C-14J)
Chicago, IL 60604-3590
(312) 886-0559
clarizio.richard@epa.gov

and

Ellen Riley
Environmental Scientist
Environmental Protection Agency, Region 5
77 West Jackson Blvd. (AE-17J)
Chicago, IL 60604-3590
(312) 886-9497
riley.ellen@epa.gov

and

Kelly Brantner
EPA Office of Enforcement
and Compliance Assurance
Mail Code 2243-A
1200 Pennsylvania Ave., N.W.
Washington, D.C. 20460
Brantner.kelly@epa.gov

| | |
|---|---|
| To the Corps (by mail and email): | Kevin J. Jerbi<br>Assistant District Counsel<br>U.S. Army Corps of Engineers, Chicago District<br>231 S. LaSalle Street, Suite 1500<br>Chicago, IL 60604<br>(312) 846-5352<br>kevin.j.jerbi@usace.army.mil<br><br>and<br><br>Kathleen Chernich<br>Chief, East Section<br>U.S. Army Corps of Engineers, Chicago District<br>231 S. LaSalle Street, Suite 1500<br>Chicago, IL 60604<br>(312) 846-5531<br>kathy.g.chernich@usace.army.mil |
| To DOI (by mail and email): | Kimberly Gilmore<br>Field Solicitor<br>U.S. Department of Interior<br>Three Parkway Center, Room 385<br>Pittsburgh, PA 15220<br>(412) 937-4017<br>kimberly.gilmore@sol.doi.gov<br><br>and<br><br>Edward Karecki<br>Environmental Contaminants Specialist<br>U.S. Fish & Wildlife Service<br>230 South Dearborn Street, Suite 2938<br>Chicago, IL 60604<br>(847) 366-2349<br>edward_karecki@fws.gov |
| To the State (by mail and email): | Gerald T. Karr<br>Supervising Attorney<br>Office of the Illinois Attorney General<br>Environmental Bureau<br>69 West Washington Street, Suite 1800<br>Chicago, Illinois 60602<br>gerald.karr@ilag.gov |

Michelle Ryan
Assistant Counsel
Division of Legal Counsel
Illinois Environmental Protection Agency
1021 N. Grand Avenue East
P.O. Box 19276
Springfield, Illinois 62794-9276
Michelle.ryan@illinois.gov

Virginia Yang
Sr. Legal Counsel
Illinois Department of Natural Resources
2020 W. Stearns Road
Bartlett, Illinois 60302
virginia.yang@illinois.gov

and

Thomas Heavisides
Manager, Containment Assessment Section
Illinois Department of Natural Resources
One Natural Resources Way
Springfield, IL 62702-1271
tom.heavisides@illinois.gov

As to Defendants (by mail and email):

Daniel G. Ownby
President, West Shore Pipe Line Company
One Greenway Plaza, Suite 600
Houston, TX 77046
downby@buckeye.com

Evan Hofmann
Vice President, General Counsel and Secretary
Buckeye Pipe Line Company, L.P.
One Greenway Plaza, Suite 600
Houston, TX 77046
ehofmann@buckeye.com

and

Gary S. Rovner
Foley & Lardner LLP
321 N. Clark Street
#3000
Chicago, IL 60654
grovner@foley.com

35. Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

36. Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XV. RETENTION OF DOCUMENTS

37. Until five (5) years after the Effective Date, Defendants shall preserve and retain all non-identical copies of records (including records in electronic form) now in its possession or control or that come into its possession or control that relate in any manner to its compliance with this Consent Decree. Each Defendant must also retain, and instruct its contractors and agents to preserve, for the same period of time specified above all non-identical copies of the last draft or final version of any records (including records in electronic form) now in its possession or control or that come into its possession or control that relate in any manner to Defendants' compliance with this Consent Decree, provided, however, that each Defendant (and its contractors and agents) must retain, in addition, copies of all data generated while carrying out the West Area Wetland Adaptive Management and Monitoring Plan, Exhibit 3, and not contained in the aforementioned records required to be retained. Each of the above record retention requirements shall apply regardless of any corporate retention policy to the contrary.

38. At the conclusion of this record retention period, Defendants shall notify the United States and the State at least 90 days prior to the destruction of any such records, and, upon request by the United States or the State, and except as to records subject to claims of privilege or protection, Defendants shall deliver any such records to the United States or the State.

39. This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States or the State pursuant to applicable federal or state laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendants to maintain documents, records, or other information imposed by applicable federal or state laws, regulations, or permits.

## XVI. EFFECTIVE DATE

40. The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XVII. RETENTION OF JURISDICTION

41. The Court shall retain jurisdiction over both the subject matter of this Consent Decree and the Parties for the duration of the performance of the terms and provisions of this Consent Decree for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the construction or material modification of this Consent Decree, or to effectuate or enforce compliance with its terms. Nothing in this Consent Decree shall be deemed to alter the Court's power to enforce this Consent Decree.

## XVIII. PUBLIC PARTICIPATION

42. This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) Days for public notice and comment in accordance with OPA Section 1006(c)(5), 33 U.S.C. § 2706(c)(5), and 28 C.F.R. § 50.7. The Parties agree and acknowledge that final approval by the United States and the entry of this Consent Decree are subject to notice of lodging of the Consent Decree and consideration of public comments. The United States reserves the right to withdraw or withhold consent to the proposed settlement if public comments disclose facts or considerations which indicate that the Consent Decree is inappropriate, improper, or inadequate.

43. Defendants agree not to oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified the Defendants in writing that it no longer supports entry of the Decree. Defendants consent to entry of this Consent Decree without further notice except through the Court's electronic case filing system.

44. If for any reason the Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any Party and, if so voided, the terms of the agreement may not be used as evidence in any litigation between the Parties.

## XIX. ATTACHMENTS

45. The following appendices are attached to and incorporated into this Consent Decree:

Appendix A is a map of the Spill Site.

Appendix B is the Trustees Memorandum of Understanding.

46. The following exhibits are attached to this Consent Decree for informational purposes:

Exhibit 1 is the Trustees' NRDA Restoration Overview Document.

Exhibit 2 is a draft of the Corps' Regional Permit-6 authorization that it intends to issue in substantially similar form within 60 days after the Effective Date.

Exhibit 3 is the West Area Wetland Adaptive Management and Monitoring Plan.

## XX. SIGNATORIES/SERVICE

47. Each undersigned representative of Defendants, the State of Illinois, and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

48. This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis. Defendants agree to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.

## XXI. INTEGRATION AND MODIFICATION

49. This Consent Decree, together with the State Order, constitute the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersede all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein. No other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

50. This Consent Decree shall not be modified by any prior oral or written agreement, representation, or understanding. Any material modification of this Consent Decree shall be made only by written agreement of the Parties and shall take effect only upon approval by the Court.

51. Any non-material modification of this Consent Decree shall be made by written agreement of the Parties, and shall not take effect until filed with the Court. Nothing in this Consent Decree shall be deemed to alter the Court's power to enforce, supervise, or approve modifications to this Consent Decree.

52. The provisions of this Consent Decree are not severable. The Parties' consent hereto is conditioned upon the entry of the Consent Decree in its entirety without modification, addition, or deletion except as agreed to by the Parties.

53. Economic hardship or changed financial circumstances of a Defendant shall not serve as a basis for modification of this Consent Decree.

## XXII. TERMINATION

54. After Defendants have made all payments under Section V (Civil Penalty) and Section VI (Other Payments by Defendants), including the payment of Interest on such payments, and paid all applicable stipulated penalties under Section VII (Stipulated Penalties), Defendant may serve upon the United States and the State a Request for Termination, stating that Defendant has satisfied those requirements, together with all necessary supporting documentation. If Plaintiffs agree with the request, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree. If Plaintiffs disagree that Defendants have satisfied all requirements for termination, Defendants may move the Court for termination, provided that, no motion for termination shall be filed prior to 120 Days after service of the request for termination.

55. The provisions and effect of Section III (Applicability), Section X (Covenant Not to Sue by Plaintiffs), Section XI (Covenant Not to Sue by Defendants), Section XII (Effect of Settlement), and XV (Retention of Documents) shall survive Termination of this Consent Decree.

## XXIII. 26 U.S.C. SECTION 162(f)(2)(A)(ii) IDENTIFICATION

56. For purposes of the identification requirement of Section 162(f)(2)(A)(ii) of the Internal Revenue Code, 26 U.S.C. § 162(f)(2)(A)(ii), and 26 C.F.R. § 1.162-21(b)(2), performance of Section XV (Retention of Documents), Paragraphs 37-38; and the $7,200,000 plus Interest paid pursuant to Section VI (Other Payments by Defendants), Paragraph 12 are restitution, remediation, or required to come into compliance with the law.

## XXIV. FINAL JUDGMENT

57. Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States, the State, and Defendants.

Dated and entered this 7th day of December, 2021

[signature]
UNITED STATES DISTRICT JUDGE

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States & Illinois v. Buckeye Pipe Line Company, L.P. & West Shore Pipe Line Company* (N.D. Ill.)

FOR THE UNITED STATES OF AMERICA:

TODD KIM
Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

10/13/2021
Date

By: /s/Michael J. Zoeller

MICHAEL J. ZOELLER
Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
Washington, DC 20044-7611
Tel: (202) 305-1478
michael.zoeller@usdoj.gov

/s/ Daniel R. Dertke (with consent)

DANIEL R. DERTKE
Environmental Defense Section
Environment and Natural Resources Division
U.S. Department of Justice
Washington, DC 20044-7611
Tel: (202) 514-0994
daniel.dertke@usdoj.gov

JOHN R. LAUSCH, JR.
United States Attorney

/s/ Jonathan C. Haile (with consent)
By: JONATHAN C. HAILE
Assistant United States Attorney
Northern District of Illinois
219 South Dearborn Street, Fifth Floor
Chicago, IL 60604
Voice: (312) 886-2055
jonathan.haile@usdoj.gov

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States & Illinois v. Buckeye Pipe Line Company, L.P. & West Shore Pipe Line Company* (N.D. Ill.)

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY:

CHERYL NEWTON Digitally signed by CHERYL NEWTON Date: 2021.08.03 18:53:42 -05'00'

CHERYL L. NEWTON
Acting Regional Administrator
U.S. Environmental Protection Agency, Region 5

T. Leverett Nelson Digitally signed by T. Leverett Nelson Date: 2021.07.29 16:30:35 -05'00'

T. LEVERETT NELSON
Regional Counsel
Office of Regional Counsel
U.S. Environmental Protection
Agency, Region 5
77 West Jackson Boulevard
Chicago, IL 60604-3590

Richard Clarizio Digitally signed by Richard Clarizio Date: 2021.07.30 14:41:55 -05'00'

RICHARD J. CLARIZIO
Associate Regional Counsel
Office of Regional Counsel
U.S. Environmental Protection
Agency, Region 5
77 West Jackson Boulevard
Chicago, IL 60604-3590

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States & Illinois v. Buckeye Pipe Line Company, L.P. and West Shore Pipe Line Company* (N.D. Ill.)

FOR THE U.S. ENVIRONMENTAL PROTECTION AGENCY:

Dated:

LAWRENCE STARFIELD Digitally signed by LAWRENCE STARFIELD Date: 2021.08.24 16:29:00 -04'00'

LAWRENCE E. STARFIELD
Acting Assistant Administrator
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency

ROSEMARIE KELLEY
Director
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency

MARK POLLINS
Director
Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency

KELLY ANN KACZKA BRANTNER
Attorney-Advisor
Water Enforcement Division
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States & Illinois v. Buckeye Pipe Line Company, L.P. and West Shore Pipe Line Company* (N.D. Ill.)

FOR THE U.S. ARMY CORPS OF ENGINEERS:

KEVIN J. JERBI
Asst. District Counsel
U.S. Army Corps of Engineers, Chicago District
231 S. LaSalle Street, Suite 1500
Chicago, Illinois 60604

Kathleen G. Chernich
Digitally signed by Kathleen G. Chernich
Date: 2021.08.27 11:38:16 -05'00'

KATHLEEN G. CHERNICH
Chief, East Section
Regulatory Branch, Permits and Enforcement
U.S. Army Corps of Engineers, Chicago District
231 S. LaSalle Street, Suite 1500
Chicago, Illinois 60604

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States & Illinois v. Buckeye Pipe Line Company, L.P. and West Shore Pipe Line Company* (N.D. Ill.)

FOR THE STATE OF ILLINOIS:

KWAME RAOUL
Attorney General of the
State of Illinois

MATTHEW J. DUNN, Chief
Environmental Enforcement/
Asbestos Litigation Division

DATE: 7/9/21

BY: [signature]
STEPHEN J. SYLVESTER, Chief
Assistant Attorney General
Environmental Bureau

ILLINOIS ENVIRONMENTAL
PROTECTION AGENCY

JOHN J. KIM, Director
Illinois Environmental Protection Agency

DATE: 6/25/21

BY: [signature]
CHARLES W. GUNNARSON
Chief Legal Counsel

ILLINOIS DEPARTMENT OF
NATURAL RESOURCES

COLLEEN M. CALLAHAN, Director
Illinois Department of Natural Resources

DATE: ________

BY: ________________________
RENEE M. SNOW
General Counsel

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of *United States & Illinois v. Buckeye Pipe Line Company, L.P. and West Shore Pipe Line Company* (N.D. Ill.)

FOR THE STATE OF ILLINOIS:

KWAME RAOUL
Attorney General of the
State of Illinois

MATTHEW J. DUNN, Chief
Environmental Enforcement/
Asbestos Litigation Division

DATE: _________

BY: ____________________________________
STEPHEN J. SYLVESTER, Chief
Assistant Attorney General
Environmental Bureau

ILLINOIS ENVIRONMENTAL
PROTECTION AGENCY

JOHN J. KIM, Director
Illinois Environmental Protection Agency

DATE: _________

BY: ____________________________________
CHARLES W. GUNNARSON
Chief Legal Counsel

ILLINOIS DEPARTMENT OF
NATURAL RESOURCES

COLLEEN M. CALLAHAN, Director
Illinois Department of Natural Resources

DATE: 7/9/2021

BY: Renee Snow
RENEE M. SNOW
General Counsel

THE UNDERSIGNED PARTIES enter into this Consent Decree in the matter of *United States & Illinois v. Buckeye Pipe Line Company, L.P. and West Shore Pipe Line Company* (N.D. Ill.)

FOR BUCKEYE PIPE LINE COMPANY, L.P.
By MAINLINE L.P., as its general partner
By MAINLINE GP LLC, as its general Partner

6/4/21
Date

EVAN HOFMANN
Vice President, General Counsel, and Secretary

FOR WEST SHORE PIPE LINE COMPANY:

6/4/2021
Date

DANIEL G. OWNBY
President, West Shore Pipe Line Company